UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JESSE E.,[1]

                                          Plaintiff                    DECISION and ORDER

-vs-                                                                   6:24-CV-6516-CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                          Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review a final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.   Now

before the Court is Plaintiff's application for judgment on the pleadings (ECF No. 7) and

Defendant's cross-motion for the same relief (ECF No. 11).   For reasons discussed

below, Plaintiff's application is denied, Defendant's application is granted, and this action

is dismissed.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step

sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20
> C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether
> the claimant is currently engaged in substantial gainful activity. If he is not,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id.* If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim, in which "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines

3

the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773; *see also*, 42 U.S.C.A. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tejada v. Apfel*, 167 F.3d at 773 (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise.*") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ."); *Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *3 (D.

4

Conn. Sept. 29, 2023) ("A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.") (citations omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court also may not rely on any *post hoc* rationalizations offered

by the Commissioner. However, a court may consider evidence that was evidently considered by the Administrative Law Judge ("ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id.*[; [s]*ee also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

6

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Briefly, the various aspects of Plaintiff's motion pertain to the ALJ's RFC finding, in which the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: claimant can frequently climb stairs and ramps; claimant can frequently stoop, kneel, crouch, and crawl; claimant can frequently reach in all directions with both upper extremities; claimant can perform unskilled, simple, routine, and repetitive tasks; claimant can occasionally interact with supervisors and the general public; and claimant can occasionally tolerate changes in a routine work setting.

Tr. 1107.

More specifically, and as discussed below in greater detail, Plaintiff maintains that remand is required for essentially four reasons: 1) the ALJ failed to adequately explain why he included a limitation for contact with supervisors and the public, but not for contact with co-workers; 2) the ALJ failed to incorporate all limitations, from two medical opinions that he found persuasive into the RFC finding; 3) the ALJ failed to properly evaluate the opinion of a treating nurse practitioner; and 4) the ALJ failed to properly analyze the opinion of a consultative medical examiner.

The Commissioner disagrees, and maintains that the ALJ's decision is free of error and supported by substantial evidence, for reasons set forth below in more detail.

The Court has carefully considered the parties' submissions and the relevant portions of the record.

7

DISCUSSION

Issue 1: Whether the ALJ properly explained why the RFC finding limits contact with the public and supervisors, but not with co-workers?

Plaintiff first maintains that the ALJ erred in finding that Plaintiff was limited to having only occasional interaction with supervisors and the general public, without placing any similar limitation on his contact with co-workers.    Plaintiff contends that the ALJ erred in failing to adequately explain this finding, and, alternatively, that the finding is unsupported by substantial evidence.

The Commissioner disagrees, contending that this aspect of the RFC finding is supported by substantial evidence, and adequately explained in the ALJ's decision, stating:

> [T]he ALJ explained that Dr. Brownfeld's opinion that Plaintiff had moderate limitations in his abilities to regulate emotions, control his behavior, and maintain his well-being "were partially the basis for my conclusion that [Plaintiff] can occasionally interact with supervisors and the public." Tr. 1115; citing Tr. 1776. Thus, the ALJ made a distinction between adaptive abilities and interaction abilities and assessed an RFC that limited Plaintiff's interaction with supervisors and the public based on the former. See id. Indeed, supervisors and the public, not coworkers, make demands on a worker, and a person's ability to respond to demands is an adaptive, not interpersonal, skill, as the ALJ noted. Tr. 1106 (ALJ explaining that the domain of adapting and managing oneself refers, inter alia, to a person's ability to "respond to demands"). Therefore, Plaintiff's argument that the ALJ provided no explanation for this aspect of his RFC finding is meritless.

Def. Memo of Law, ECF No. 11-1 at pp. 20-21.

Having considered the parties' arguments, the Court finds, for the reasons discussed below, that Plaintiff's arguments on this point lack merit.

8

Plaintiff maintains that the ALJ failed to properly explain, or support with substantial evidence, his RFC finding that "claimant can occasionally interact with supervisors and the general public." The Court earlier set forth the relevant legal principles concerning the substantial evidence standard. The legal principles concerning the ALJ's duty to explain his RFC finding are similarly well settled:

> Courts in this Circuit have indicated that ALJs must not only identify supporting evidence, they also must build an accurate and logical bridge from that evidence to the conclusion. In sum, while ALJs are not required to reconcile every conflicting shred of medical testimony, they must discuss the evidence and factors crucial to the disability determination with sufficient specificity to enable this Court to decide whether the determination is supported by substantial evidence.

*Orlando Christopher D. v. Commissioner*, No. 1:24-CV-01526 (PJE), 2026 WL 494026, at *8 (N.D.N.Y. Feb. 23, 2026) (citations and internal quotation marks omitted); *see also, Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0380 (JJM), 2024 WL 4131237, at *5 (W.D.N.Y. Sept. 10, 2024) ("ALJ Bell's explanation was sufficiently specific to satisfy his obligation 'to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached.'") (citation omitted).

However, it is also well-settled that "this principle supplies *a basis for remand* only when the link between evidence and conclusion is so opaque as to frustrate review." *Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-CV-00784-TOF, 2023 WL 6357961, at *6 (D. Conn. Sept. 29, 2023) (emphasis added). In this regard, to be sufficient, the ALJ's explanation need only allow the Court to understand the ALJ's reasoning, and be supported by substantial evidence. *See, Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-CV-

9

00784-TOF, 2023 WL 6357961, at *4 (D. Conn. Sept. 29, 2023) ("[The ALJ's] discussion, while not lengthy, is nonetheless sufficient to permit the Court to understand his reasoning: he thought that the data in the school records suggesting a marked limitation were outweighed by other data suggesting a lower level of limitation."); *see also, Tami B. v. Comm'r of Soc. Sec.*, No. 3:21-CV-01460 (JCH), 2023 WL 2403898, at *8 (D. Conn. Mar. 7, 2023) ("[A] district court must remand where the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence.").

Here, in connection with the mental portion of his RFC finding, the ALJ reviewed the relevant opinion evidence, and, in particular, the opinions of two agency review psychologists, H. Ferrin, Ph.D. ("Ferrin") and D. Brown, Psy.D. ("Brown"), and the opinion of consultative examining psychologist Adam Brownfeld, Ph.D. ("Brownfeld"). The ALJ noted that Ferrin and Brown each opined that Plaintiff would be moderately limited in "interact[ing] appropriately with the general public" and "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," but that Plaintiff could otherwise "respond appropriately to supervisors and coworkers." The ALJ found that both of those opinions were "generally persuasive," since they were "largely consistent with the medical evidence concerning Plaintiff's mental health issues."

Brownfeld, meanwhile, found "no evidence of limitation" for Plaintiff "interacting adequately with supervisors, coworkers, and the public." Tr. 1766. The ALJ found Brownfeld's opinion overall only "partially persuasive," since it was only "somewhat consistent" with the evidence. However, the ALJ indicated that he partially relied on

10

Brownfeld's opinion when limiting Plaintiff's contact with supervisors and the general public, stating:

> While his findings that claimant is moderately limited in his ability to regulate his emotions, control his behavior, and maintain his well-being were not stated in vocationally relevant terms, those findings were partially the basis for my conclusion that claimant can occasionally interact with supervisors and the general public and occasionally tolerate changes in a routine work setting.

Tr. 1115.

Then, later in the decision, when summarizing the RFC finding, the ALJ stated that, "[t]he mental limitations in the [RFC finding] were based on claimant's own account of his mental abilities, and the opinions of Dr. Brownfeld, Dr. Ferrin, and Dr. Brown." Tr. 1116.

Accordingly, it is evident to the Court that, when making the mental portion of the RFC finding, the ALJ limited Plaintiff to occasional interaction with supervisors and the public, based on the opinions of Ferrin and Brown, who each indicated that Plaintiff would be moderately limited in "interact[ing] appropriately with the general public" and in "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," and on the opinion of Brownfeld, who indicated that Plaintiff was moderately limited in his ability to regulate his emotions, control his behavior, and maintain his well-being. In making this determination, the ALJ resolved the conflicting opinion evidence in Plaintiff's favor, since, again, Brownfeld, who actually examined Plaintiff, opined that Plaintiff had no limitation interacting with anyone. Tr. 1766. It further appears that the ALJ did not place any similar limitation on Plaintiff interacting with co-workers, since neither Ferrin, nor Brown, nor Brownfeld, indicated that Plaintiff was limited in interacting with coworkers.

11

Tr. 84-85, 98-99, 1766.

Plaintiff nevertheless seems to maintain that the ALJ's decision not to limit Plaintiff's interaction with coworkers is inconsistent and erroneous, since the ALJ found, under the paragraph B criteria, that Plaintiff would be moderately limited in "interacting with others," referring to "supervisors, coworkers, and the public." Pl. Memo of Law, ECF No. 7-1 at p. 14; ALJ Decision at Tr. 1105.   However, the Court again disagrees, since a step-three finding and a RFC finding have distinct functions, and the ALJ is not required to incorporate paragraph B findings into the RFC finding. *See, e.g., Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *12 (D. Conn. Oct. 19, 2020)   ("Though the ALJ assessed the Plaintiff as having moderate limitations in "interacting with others" and "concentrating, persisting, or maintaining pace" (R. 13) at Step Three, she was not obligated to explicitly incorporate those findings into the RFC.") (collecting cases); *see also, Serrano v. Comm'r of Soc. Sec.*, No. 22CIV5627JPOSLC, 2023 WL 6049651, at *17 (S.D.N.Y. July 24, 2023) ("The applicable regulations provide that, to determine the severity of a mental impairment at step three of the disability determination, the Commissioner assesses, on a five-point scale, four areas to determine the degree of functional limitation: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 416.920a(c)(3)–(4). As the Second Circuit has explained, these factors only apply at step three—determining the severity of a mental impairment—"not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps." *Whipple v. Astrue*, 479 F. App'x 367, 369 (2d Cir. 2012) (summary order)[.]") (other citations omitted), report and

12

recommendation adopted, No. 22-CV-5627 (JPO), 2023 WL 6039337 (S.D.N.Y. Sept. 15, 2023).

Consequently, the Court finds that the ALJ adequately explained the mental RFC finding, and that the decision not to place any limitation therein on Plaintiff's ability to interact with coworkers is supported by substantial evidence, contrary to what Plaintiff alleges. This aspect of Plaintiff's motion is therefore denied.

<u>Issue 2: Whether the ALJ erred by failing to incorporate all the limitations</u>
<u>Opined to by Brown and Ferrin into the RFC finding?</u>

Plaintiff next asserts that, since the ALJ found the opinions of Ferrin and Brown generally persuasive, it was error for him not to either include all limitations contained therein into the RFC finding, or explain why he did not do so. Pl. Memo of Law, ECF No. 7-1 at p. 17.   More specifically, Plaintiff contends that, since Brown and Ferrin each opined that Plaintiff would be "moderately limited" "regarding maintaining attendance and completing a normal workday or workweek" without interruption from psychologically-based symptoms, the ALJ should have either included limitations reflecting those opinions into the RFC finding, or explained why he did not do so. *Id.*; *see also, id.* at 18 ("Th[e] RFC does not account for moderate limitations with sustaining an ordinary routine or regular attendance at work and completing a normal workday or workweek without interruptions.").   In this regard, Plaintiff argues that such moderate limitations are not properly accounted for merely by limiting Plaintiff to simple, routine, and unskilled work, and that "moderate limitations for sustaining an ordinary routine and regular attendance at work require further limitations, including [allowances for] off-task time and absences."

13

*Id.* at 20. Plaintiff further maintains that remand is required, since the error is harmful, inasmuch as Plaintiff's moderate mental limitations would likely cause him to be absent from work, and the VE testified that one absence per month would be work-preclusive. *Id.* at 21.

The Commissioner disagrees, and maintains that the ALJ's decision not to include additional limitations, such as those argued-for by Plaintiff, is supported by substantial evidence, such as Brownfeld's statement that he found no evidence of limitation in Plaintiff's ability to sustain a routine or to maintain regular attendance at work, and the similar opinions of Ferrin and Brown that Plaintiff could sustain a routine. Def. Memo of Law, ECF No. 11-1 at p. 17. More specifically, the Commissioner states:

> Drs. Ferrin and Brown explicitly stated that Plaintiff "can sustain a routine." Tr. 86, 100. The ALJ found the same. Tr. 1105. Certainly, the ALJ's interpretation of Drs. Ferrin and Brown's assessments trump that of Plaintiff under the substantial evidence standard of review. Further, the ALJ also found Dr. Brownfeld's opinion persuasive, and Dr. Brownfeld opined that Plaintiff had no limitations in sustaining an ordinary routine and regular attendance at work[.]

Id. at 18-19 (citation omitted). The Commissioner further states that, in any event, the RFC finding, limiting Plaintiff to "unskilled, simple, routine" work, adequately accounts for moderate mental limitations, and that further limitations, for absences and/or time off-task, were not warranted. *See, id.* at 19 ("[T]he RFC properly accounts for these opinions, which are consistent with it and the decision's step five finding for unskilled jobs."). Finally, the Commissioner asserts that Plaintiff is incorrect, to assert that when making an RFC finding an ALJ must include every limitation contained in a medical opinion that

14

he finds persuasive, since an RFC finding "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Id.* at 20 (citations omitted).

Drs. Ferrin and Brown found that Plaintiff would be moderately limited "regarding maintaining attendance and completing a normal workday or workweek" without interruption from psychologically-based symptoms. Indeed, Ferrin and Brown both found that Plaintiff was moderately limited in performing activities within a schedule, maintaining regular attendance, being punctual, and completing a normal workday and workweek without interruption from psychologically-based symptoms. Tr 84, 98. However, Ferrin and Brown concluded that, despite his limitations, Plaintiff could maintain adequate attention and concentration to complete work like procedures and sustain a routine. Tr. 86, 100.

Brownfeld, meanwhile, found that Plaintiff had no limitation in either "sustaining concentration and performing a task at a consistent pace" or "sustaining an ordinary routine and regular attendance at work." Tr. 1766. However, the ALJ did not adopt that aspect of Brownfeld's opinion. *See*, Tr. 1115, 1st paragraph (The ALJ indicated that he only relied on Brownfeld's opinion to make the RFC finding concerning Plaintiff's ability to interact with others). Rather, the ALJ stated that, with the exception of the limitations on interaction with supervisors and the public, the mental portion of the RFC finding is based on Plaintiff's own account of his limitations, and on the opinions of Ferrin and Brown. Tr. 1116. In doing so, the ALJ once again resolved a conflict between the opinion evidence in Plaintiff's favor.

Nevertheless, as discussed earlier, Plaintiff here contends that inasmuch as Ferrin and Brown found that Plaintiff would be "moderately limited" with regard to maintaining attendance and completing a normal workday or workweek without interruption from psychologically-based symptoms, the ALJ was required to include limitations in the RFC finding for time off-task and absences from work.   In this regard, Plaintiff insists that such moderate limitations are not properly accounted for merely by limiting Plaintiff to simple, routine, and unskilled work.

However, the Court disagrees with Plaintiff, and agrees with the Commissioner, that the RFC finding properly accounts for moderate limitations in sustaining an ordinary routine or regular attendance at work and completing a normal workday or workweek without interruptions.

As a preliminary matter, Plaintiff is incorrect insofar as he asserts that an ALJ is required to adopt every limitation contained in a medical opinion that he finds persuasive. Rather, an ALJ's RFC finding need not correspond to any particular medical opinion, provided that it is supported by substantial evidence:

> The ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other substantial evidence. *See Halloran*, 362 F.3d at 32. And the ALJ bears "the final responsibility" for making RFC determinations. 20 C.F.R. § 404.1527(d)(2). It follows from these basic principles that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence. *See Richardson*, 402 U.S. at 399, 91 S.Ct. 1420 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). In so holding, we here reiterate a point that this Court has previously made summarily. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (stating that an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited

in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").

*Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

Neither does the Court find merit to Plaintiff's contention that the RFC finding is insufficient as a matter of law to account for Plaintiff's moderate mental impairments. In this regard, the RFC finding, in pertinent part, limited Plaintiff to "unskilled, simple, routine, and repetitive tasks," with occasional interaction with supervisors and the public, and occasional changes in the work setting. Tr. 1107. In a case with similar facts, the Second Circuit stated that such an RFC finding was adequate, to account for moderate mental limitations pertaining to the ability to maintain a schedule and regular attendance at work, without additional limitations for time off-task or absences:

> The ALJ determined that Valdes-Ocasio had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to understanding, remembering, and carrying out simple instructions, involving routine and repetitive tasks; with no high production demands; and no more than occasional contact with the public."
>
> ***
>
> Valdes-Ocasio argues that the ALJ's RFC assessment "fail[ed] to include any limitations to staying on task and/or attendance despite undisputed medical opinions assessing such limitations." Appellant's Br. at 14 (typeface altered). But the medical record supports the ALJ's findings. Dr. Harding, the state-agency consultative examiner, concluded that Valdes-Ocasio was "capable of performing unskilled work in a low contact setting due to reported difficulties interacting with others." CAR at 69. The ALJ concluded that due "to moderate limitations in concentrating, persisting, or maintaining pace, [Valdes-Ocasio] can have no high production demands." *Id.* at 22. The ALJ found, however, that "greater restrictions are not supported by the evidence of record." *Id.*

17

> Dr. Harding indicated that Valdes-Ocasio was "moderately limited" in her ability to "carry out detailed instructions," "maintain attention and concentration for extended periods," and "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *See id.* at 68. Nothing from Dr. Harding's report required the ALJ to include more detailed limitations in the RFC assessment. *See Schillo*, 31 F.4th at 78 ("[An] ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.").

*Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023); *see also, Raul G. v. Comm'r of Soc. Sec.*, No. 1:24-CV-08828 (SDA), 2026 WL 412085, at *14 (S.D.N.Y. Feb. 13, 2026) ("[M]oderate limitations generally are consistent with the ability to perform unskilled work. Thus, the Second Circuit frequently has rejected arguments that an ALJ's RFC determination must include restrictions regarding attendance or off-task percentage to account for moderate limitations in, *inter alia*, concentration and the ability to sustain regular attendance.") (collecting Second Circuit decisions).

Pursuant to such direction from the Second Circuit, the Court finds that the challenged RFC finding here was sufficient to account for Plaintiff's moderate limitations in sustaining an ordinary routine or regular attendance at work and completing a normal workday or workweek without interruptions. The Court also determines that the finding is supported by substantial evidence, including the opinions of Ferrin and Brown. Consequently, this aspect of Plaintiff's motion is also denied.

18

<u>Issue 3: Whether the ALJ erred in finding that the work-preclusive opinion of treating Nurse Practitioner Katelynn Coffey, N.P. was unpersuasive?</u>

Plaintiff next maintains that when assessing the opinion of treating nurse practitioner Katelynn Coffey, N.P. ("Coffey"), and finding it unpersuasive, the ALJ committed the following three errors:   He failed to properly evaluate the supportability of the opinion, since he only compared it to Coffey's own notes, taken on the date she wrote the opinion; he failed to properly evaluate the consistency of the opinion, since he did not compare it to any other evidence; and he improperly and inconsistently "took issue with the fact" that Coffey had no apparent expertise in the treatment of orthopedic or spinal issues, without applying other medical opinions to the same scrutiny. Pl. Memo of Law, ECF No. 7-1 at p. 24.   Plaintiff contends that these errors were not harmless, since Coffey's opinion, if accepted, would have precluded Plaintiff from performing any type of work. *Id.* at 24.

The Commissioner disagrees, maintaining that the ALJ properly evaluated the supportability and consistency of Coffey's opinion.   The Commissioner contends that the ALJ properly noted that Coffey's opinion was not supported by her own notes taken on the day she completed the report, which notes reported findings that were fairly consistent with other clinical findings that were reported throughout the alleged period of disability by Coffey and others, which the ALJ discussed.   In so doing, the Commissioner maintains, the ALJ considered both the supportability and consistency of Coffey's opinion. The Commissioner further contends that the ALJ's observation concerning Coffey's lack of specialization was proper, though not required, and that the ALJ's decision not to

19

similarly discuss the other doctors' areas of specialization was "of no moment," since the ALJ was only required to discuss the supportability and consistency of their opinions, which he did.

Plaintiff maintains that the ALJ failed to properly evaluate Coffey's medical opinion, and the legal principles relating to an ALJ's duty in this regard are clear:

> The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2)[;20 C.F.R. § 404.1520c(b)(2)].
>
> With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) [;20 C.F.R. § 404.1520c(c)(1)]. The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2)[;20 C.F.R. § 404.1520c(c)(2)].
>
> ***
>
> An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

20

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2

(N.D.N.Y. Sept. 20, 2022).

> In most instances, the ALJ may, but is not required to, discuss the other factors previously required to assess medical opinion evidence (i.e., relationship with the claimant, <u>specialization</u>, and other relevant factors). 20 C.F.R. § 404.1520c(b)(2). The ALJ must consider those additional factors if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported ... and consistent with the record ... but are not exactly the same," at which point the ALJ must "articulate how [she] considered the other most persuasive factors ...." 20 C.F.R. § 404.1520c(b)(3).

*Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 17 (S.D.N.Y. 2022) (emphasis added).

And, of course, as a general matter of fairness, an ALJ should, as much as possible, apply the various factors consistently when weighing medical opinions. *Cf., Passmore v. Comm'r of Soc. Sec.*, No. 3:20-CV-1370, 2023 WL 6290646, at *4 (N.D. Ohio Sept. 27, 2023) ("[T]here is nothing to suggest the ALJ inconsistently considered the "examining relationship" subfactor to credit only certain opinions[.]"); *Butts v. Comm'r of Soc. Sec.*, No. 3:16-CV-874 (CFH), 2018 WL 387893, at *7 (N.D.N.Y. Jan. 11, 2018) ("[A]lthough Dr. Wiley is not an orthopedic specialist like Dr. Berard, neither is consultative examiner Dr. Perkins-Mwantuali, who specializes in internal medicine and pediatrics. In affording Dr. Perkins-Mwantuali's opinion great weight despite her lack of orthopedic specialty, the ALJ inconsistently applies this specialization distinction when considering the opinion evidence.") (applying old treating physician rule).

Here, when explaining his physical RFC finding, the ALJ began by noting that, overall, the medical evidence was not consistent with the severity of Plaintiff's self-

21

reported symptoms. Tr. 1109 ("The medical evidence is not consistent with the severity of symptoms and degree of limitation that would preclude claimant from performing any work."). For example, the ALJ explained that the treatment notes of Plaintiff's primary care physician, Yehuda Nussbaum, D.O. ("Nussbaum"), indicated that Plaintiff appeared to be in no distress, contrary to what he told Nussbaum, and that the results of Nussbaum's examinations were essentially normal. Tr. 1110. The ALJ further noted that the results of the consultative physical exam by Harbinder Toor, M.D. ("Toor") were also essentially normal, and that Toor found an x-ray of Plaintiff's cervical spine showed only "mild degenerative changes at C5-6 and straightening of the normal cervical lordosis." Tr. 1111. The ALJ also indicated that the findings of treating physician's assistant, Coffey, were largely normal, except for some spasms, tenderness, and limited range of motion in the lumbar spine, along with a bilaterally-positive straight-leg-raising test on one occasion. Tr. 1111, 1113-1114.

Overall, the ALJ summarized the medical evidence as typically showing benign findings consistent with an ability to perform at least light work, stating:

> [C]linical findings throughout the alleged period of disability support a finding that claimant is capable of performing a range of light work. Claimant's gait was observed to be normal on numerous occasions. There is no apparent documentation that claimant exhibited sensory deficits or diminished muscle strength with any consistency. Diagnostic testing shows only mild degenerative changes in claimant's spine. X-rays of claimant's cervical spine performed on September 20, 2022 revealed mild degenerative changes at C5-6 and straightening of the normal cervical lordosis. No acute fracture or subluxation was evident. The remainder of the height of the intervertebral disc spaces and vertebral bodies appeared to be relatively well maintained. X-rays of claimant's lumbosacral spine also performed that day showed no acute fracture or subluxation. The height of vertebral bodies

22

and intervertebral disc spaces wererelatively well maintained (Exhibit 21F, pp. 5–6).

Tr. 1114.

When weighing the medical opinion evidence, the ALJ essentially found that the opinions of Toor and the agency review physicians were generally consistent with the medical evidence overall,[6] while the opinions of Nussbaum and Coffey were not.  For example, the ALJ found that Nussbaum's opinion, which included statements that Plaintiff would be severely limited in standing, walking, and sitting, and that he would be absent from work at least five days per month, was inconsistent with her own findings, and appeared to be based on Plaintiff's subjective complaints. Tr. 1114 ("Dr. Nussbaum does not appear to identify any objective medical evidence in the form she completed to support these limitations.   She merely pointed to claimant's subjective account of his symptoms.").   Regarding Coffeys opinion, the ALJ stated:

> In a physical treating medical source statement completed on January 12, 2024, Ms. Coffey assessed that claimant can lift and carry 50 pounds rarely, twenty pounds occasionally, and ten pounds frequently. She determined that claimant can stand and walk for about two hours and sit for about four hours in an eight-hour workday. Ms. Coffey concluded that claimant can occasionally climb stairs, but can only rarely climb ladders. She indicated that claimant can occasionally stoop, bend, and twist. Ms. Coffey assessed that claimant can crouch and squat on an occasional or rare basis. She determined that claimant can use his upper extremities to reach, perform fine manipulations, and grasp, twist, and turn objects 100% of an eight-hour workday. Ms. Coffey estimated that claimant would be absent for at least four days each month. She also indicated that claimant's pain and other symptoms would occasionally be severe enough to interfere with the

---

[6] As discussed further below, the ALJ found that the agency review physicians' opinions were "largely consistent" with evidence, while Toor's opinion was "somewhat consistent" with the evidence.

23

attention and concentration needed to perform even simple work tasks (Exhibit 25F, pp. 9–13).

Even though Ms. Coffey has treated claimant since 2014, I find that her opinion is unpersuasive because the degree of limitations that she assessed are inconsistent with the objective medical evidence concerning claimant's physical impairments. The only clinical finding or objective sign that Ms. Coffey identifies to support the limitations she assessed is reduced range of motion in the lumbar spine (See Exhibit 25F, p. 9). That lone clinical sign is inadequate to support the degree of limitations that she assessed, especially given the diagnostic testing and the treatment that claimant has received for his back issues since the application date. Furthermore, the clinical findings that Ms. Coffey observed on the day she completed this form do not indicate the severity of physical limitations that she assessed. While Ms. Coffey noted that range of motion in the lumbar spine was decreased, but [sic] she did not specify what modalities were limited or to what degree those modalities were limited. In addition, she noted that straight leg raising was negative bilaterally and that claimant's gait was normal. Moreover, Ms. Coffey detected no sensory deficits or muscle weakness (Exhibit 26F, pp. 14–18). As indicated above, these clinical findings and diagnostic are fairly consistent with the clinical findings that were observed throughout the alleged period of disability. Finally, I note that Ms. Coffey has no apparent expertise in the treatment of orthopedic or spinal issues. Based on these considerations, I conclude that Ms. Coffey's opinion is unpersuasive.

Tr. 1115-1116.

The Court agrees with the Commissioner that this explanation satisfied the ALJ's duty to consider the supportability and consistency of Coffey's opinion.

The Court also agrees with the Commissioner that the ALJ did not err by mentioning Coffey's lack of specialization in orthopedic medicine as one of the reasons he found her opinion unpersuasive. In that regard, Plaintiff asserts that it was error for the ALJ to note Coffey's lack of specialization, while failing to similarly note the lack of

24

orthopedic specialization of agency review physicians R. Mohanty, M.D. ("Mohanty"), A. Vinluan, M.D. ("Vinluan"), and J. Randall, M.D. ("Randall"), whose opinions the ALJ found "generally persuasive." Mohanty, Vinluan, and Randall each indicated that Plaintiff was capable of light work, based on their reviews of the record, which, each of them found, generally reported normal examination findings, and on Plaintiff's reported activities of daily living.

However, the ALJ's comment about Coffey's lack of specialization in orthopedics was made in the specific context of explaining why the ALJ did not believe that Coffey's very-restrictive opinion was supported by the lone positive sign that she listed, that was orthopedic in nature, namely, decreased range of movement in the lumbar spine. Tr. 2217. Given this difference between Coffey's opinion and the opinions of Mohanty, Vinluan, and Randall, the Court does not think that it was unfair of the ALJ not to mention the agency review physicians' lack of specialization in orthopedics. In any event, the Court finds that any error by the ALJ in that regard was harmless, since, even before mentioning Coffey's lack of specialization, the ALJ had already indicated that he found Coffey's opinion unpersuasive based on the "most important" factors of supportability and consistency.[7] Consequently, this aspect of Plaintiff's motion is also denied.

---

[7] See, Rubin v. Martin O'Malley, Comm'r of Soc. Sec., 116 F.4th 145, 148 (2d Cir. 2024) ("For claims filed on or after March 27, 2017, as is the case here, the Commissioner is required to apply 20 C.F.R. § 404.1520c in evaluating medical opinion evidence in the record. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852–53 (Jan. 18, 2017). Pursuant to that regulation, the Commissioner considers the persuasiveness of each medical opinion using the factors listed in § 404.1520c(c)(1)–(5). See 20 C.F.R. § 404.1520c(a). Of those factors, supportability and consistency are the most important[.]") (footnote omitted).

25

<u>Issue 4:   Whether the ALJ properly evaluated
the consultative opinion of Dr. Toor?</u>

Plaintiff lastly maintains that remand is required because the ALJ erred in several ways when evaluating the report from Toor's consultative internal medicine examination. Toor reported almost entirely normal findings from the examination, except for "slight difficulty getting on and off examination table," limited lumbar-spine flexion, and positive straight-leg raising. Tr. 1770 ("Lumbar spine forward flexion 40 degrees, extension 0 degrees, lateral flexion and lateral rotation bilaterally 30 degrees.  SLR positive both sitting and supine bilaterally at 30 degrees.").  Toor further reported that an x-ray of Plaintiff's lumbar spine was "negative." Tr. 1771.   Toor's medical source statement was as follows: "He has moderate limitation standing, walking, squatting, bending, lifting, carrying.   He has mild to moderate limitation sitting a long time." Id.

The ALJ found that Toor's opinion was "partially persuasive," but of limited utility in making an RFC finding, insofar as it did not express Toor's findings in "vocationally relevant terms":

> After performing a consultative internal medicine examination on August 24, 2022, Dr. Toor [found that the claimant] is moderately limited in his ability to lift, carry, stand, walk, and squat. He determined that claimant is mildly to moderately limited in his ability to sit for a long time (Exhibit 21F). Even though Dr. Toor examined claimant only once, I find that his opinion is partially persuasive because his clinical observations support his findings and because his findings are somewhat consistent with the medical evidence concerning claimant's physical impairments. However, the vague terminology that Dr. Toor used to articulate his findings limited the usefulness of his opinion in formulating physical limitations in the residual functional capacity in vocationally relevant terms. Consequently, I relied on the primarily on the opinions of the DDS consultants in formulating the

26

physical limitations in the residual functional capacity.

Tr. 1115.

In particular, the ALJ indicated that the "DDS consultants" to whom he referred were Drs. Mohanty, Vinluan and Randall. Tr. 1116.   Mohanty, Vinluan, and Randall each opined that Plaintiff was capable of work at the light exertional level. Tr. 87, 101, 1258. More specifically, Mohanty and Vinluan each opined, in pertinent part, that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk "about 6 hours in an 8-hour workday," and sit "more than 6 hours on a sustained basis in an 8-hour workday," with no postural or manipulative limitations. Tr. 82-83, 96-97.   Randall opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk "about 6 hours in an 8-hour workday," and sit "about 6 hours in an 8-hour workday," with no manipulative limitations, and with the ability to "frequently" perform postural functions such as stooping, kneeling, crouching, and crawling. Tr. 1254-1255.

Plaintiff contends, however, that the ALJ "effectively rejected Dr. Toor's opinion for being vague and using nonspecific terminology, without seeking clarification of the opinion or providing any other assessment." Pl. Memo of Law, ECF No. 7-1 at p. 25. Plaintiff asserts that the ALJ had a duty to develop the record by contacting Toor for clarification. Id. at 26.   Plaintiff further maintains that the ALJ "pitted" Toor's opinion against the opinions of Mohanty, Vinluan, and Randall, and that this was "improper" since the agency review physicians "rendered their opinions without ever examining Plaintiff." Id. at 27.   Additionally, Plaintiff asserts that the ALJ failed to properly explain his

27

evaluation of Toor's report, since he "did not provide any explanation for which parts of Toor's opinion he found to be persuasive and which parts he did not."

The Commissioner disagrees, interpreting Plaintiff's argument as suggesting that Toor's opinion is inconsistent with, and presumably more restrictive than, the ALJ's RFC finding.    The Commissioner contends, rather, that the RFC finding is consistent with Toor's opinion. See, Def. Memo of Law, ECF No. 11-1 at p. 13 ("Plaintiff's final argument, that Dr. Toor's opinion is inconsistent with the RFC, should be rejected.    The ALJ found the opined moderate limitations generally persuasive and limited Plaintiff to light work with, notably, only frequent climbing of stairs and ramps, stooping, kneeling, crouching, crawling, and reaching in all directions.    The ALJ's interpretation of Dr. Toor's opinion was consistent with his RFC finding and the prior administrative medical findings [and] should be upheld.").    In that regard, the Commissioner asserts that "moderate limitations," such as those found by Toor, are consistent with light work. See, id. at 14 ("[T]he Second Circuit has confirmed that moderate limitations in prolonged sitting and standing are consistent with the ability to perform light work.") (citing White v. Berryhill, 753 F.Appx. 80, 82 (2d Cir. 2019) and Elizabeth E. v. Commissioner, No. 23-CV-6016S, 2024 WL 1549686 at *7 ( W.D.N.Y. Apr. 10, 2024)).

Having considered the parties' arguments, the Court finds that Plaintiff's argument lacks merit.    In this regard, the underlying premise of Plaintiff's argument is that Toor's opinion, if accepted, would result in an RFC finding that is more restrictive than what the ALJ found.    However, Toor indicated only that Plaintiff would have moderate limitations standing, walking, squatting, bending, lifting, and carrying, and only mild-to-moderate

28

limitation "sitting a long time."    Such moderate limitations are consistent with an RFC for light work.    Indeed, in a case with facts very similar to this one, another district court recently stated:

> ALJ Solomon . . . reviewed and weighed the opinion evidence in the record. He found [consultative examiner] Dr. Paz's report partially persuasive because although "[i]t use[d] vague terms," the opinion "is generally supported by Dr. Paz's examination findings including a normal gait and stance, full strength in the upper and lower extremities and no sensory deficits."    The ALJ also found that the report was "generally consistent with treatment records."
>
> ALJ Solomon found the state agency medical consultants persuasive. He noted that Dr. Saeed's opinion, affirmed by Dr. Putcha, was "supported by and consistent with objective findings throughout the medical evidence of record." Specifically, Dr. Saeed concluded that Plaintiff "could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight hour workday; sit about six hours in an eight hour workday; and occasionally climb, kneel, crouch and crawl." The ALJ stated that Plaintiff's treatment records "show few positive clinical findings, no stated restrictions on standing or walking after surgery, mostly normal upper and lower extremity strength, [and] no use of an assistance device."
>
> ***
>
> In making his RFC determination, ALJ Solomon assessed the opinion evidence and explained which opinions he found were more consistent with the record as a whole. The ALJ found Dr. Paz's opinion, which determined that Plaintiff had moderate limitations in bending, lifting, carrying, prolonged standing, prolonged sitting, prolonged walking, climbing stairs, kneeling, and crouching, partially persuasive.    Although Dr. Paz's opinion used "vague terms," it was supported by his examination findings and consistent with treatment records showing improvements with treatment.    The ALJ found the opinions of Dr. Saeed and Dr. Putcha most persuasive.    Dr. Saeed concluded that Plaintiff could (1) stand or walk with normal breaks for approximately six hours in an eight-hour workday, and (2) sit with normal breaks for approximately six hours in an eight-hour workday.    Dr. Saeed also determined that Plaintiff's physical impairments due to a history of neck, lower back, and knee surgery would limit him to the light exertional

29

level with only occasional climbing, kneeling, crouching, and crawling. (R. 85, 88). Dr. Putcha affirmed Dr. Saeed's findings. <u>ALJ Solomon found that the limitations identified by Dr. Saeed and Dr. Putcha were consistent with and well supported by the record. Therefore, the ALJ's reliance on state agency opinion evidence in support of his RFC finding was not in error</u>.

Plaintiff argues that because Dr. Paz found he has "moderate limitations" in prolonged sitting and standing, he cannot meet the "sitting demands of sedentary work". However, Plaintiff cites no authority that suggests moderate limitations are inconsistent with either sedentary or light work. <u>Indeed, Courts in this District have found that moderate physical limitations are consistent with physical exertion at or above the sedentary level.</u> Moreover, Dr. Paz's report supports the ALJ's RFC. Dr. Paz noted that Plaintiff was in no acute distress, could walk on heels and toes without difficulty, and needed no help rising from a chair, or getting on and off an exam table. He had a normal gait, full (5/5) strength in upper and lower extremities, intact dexterity, and full (5/5) grip strength. Nothing in Dr. Paz's report suggests an inability to perform light or sedentary work with additional limitations.

*Wulmer v. Commissioner*, No. 25 CIV. 2394 (JCM), 2026 WL 673114, at *13 (S.D.N.Y. Mar. 10, 2026) (collecting cases; internal citations and quotation marks omitted); *see also*, *Tina Marie T.P. v. Comm'r of Soc. Sec.*, No. 23-CV-4 SR, 2026 WL 369790, at *4 (W.D.N.Y. Feb. 10, 2026) ("[C]ourts in this circuit repeatedly have held that moderate limitations in walking, standing, or lifting are consistent with an RFC for light work. Moreover, courts in this Circuit have repeatedly upheld ALJ decisions that a plaintiff could perform light work when there was evidence that the plaintiff had moderate difficulties in prolonged sitting or standing. Thus, Dr. Lee's assessment of moderate limitation for prolonged sitting and walking great distances does not preclude light work.") (collecting cases, internal citations omitted).

Applying this same general reasoning here, the Court disagrees with Plaintiff

insofar as he maintains that Toor's opinion, involving "moderate" and "mild to moderate" physical limitations, was necessarily inconsistent with the ALJ's RFC finding for a reduced range of light work.  Nor, for that matter, do the relatively benign findings that Toor reported from his examination suggest a more restrictive RFC than what the ALJ found.

Moreover, even assuming *arguendo* that the RFC finding is less restrictive than Toor's opinion, the ALJ explained that such finding was based primarily on the opinions of Mohanty, Vinluan, and Randall, which the ALJ found generally persuasive, and less on the opinion of Toor, which the ALJ found only partially persuasive.  The ALJ found that the agency review physicians' opinions were more consistent with the medical evidence overall, and his finding in that regard is supported by substantial evidence. *See, Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole. *See Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").").

For this same reason, the Court also finds no merit to Plaintiff's contention that it was error for the ALJ to give greater weight to the opinions of the agency review physicians than to the opinion of Toor, merely because Toor had examined Plaintiff.

Nor does the Court agree with Plaintiff that the ALJ was required to develop the record to clarify Toor's statement that Plaintiff had "moderate" and "mild to moderate"

31

limitations. The ALJ described Toor's opinion as "vague" because the terms Toor used, namely, "moderate" and "mild," were not "vocationally relevant terms." The ALJ stated that this "limited the usefulness" of Toor's opinion in crafting an RFC finding, but he did not say that he did not understand what Toor's opinion *was*. Indeed, the ALJ necessarily had to understand the gist of Toor's opinion in order to say that it was supported by Toor's clinical observations but only somewhat consistent with the medical evidence overall. *See*, Tr. 1115 ("I find that *his opinion* is generally persuasive because his clinical observations support *his findings* and because *his findings* are somewhat consistent with the medical evidence concerning claimant's physical impairments.") (emphasis added). In sum, the ALJ's explanation on this point belies Plaintiff's contention that the ALJ needed to develop the record in order to understand Toor's opinion.[8] Consequently, this aspect of Plaintiff's motion is also denied.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 7) for judgment on

---

[8] Furthermore, even assuming *arguendo* that that the ALJ had indicated that Toor's opinion was too vague to understand, such fact would not have necessarily triggered a duty to develop the record where, as here, the record was otherwise sufficient to allow the ALJ to make an RFC finding. *See, e.g Bulgakov v. Comm'r of Soc. Sec.*, No. 2:20-CV-2031-EFB, 2021 WL 5882941, at *5 (E.D. Cal. Dec. 13, 2021) ("Plaintiff argues that the ALJ, after finding that the opinions of Drs. Regazzi and Rafanov were vague in their failure to use the "vocationally-relevant language necessary to determine a function-by-function residual functional capacity" (ECF No. 11-1, AR 24) had a duty to conduct a further inquiry into whether plaintiff's stroke caused her to suffer brain damage. However, the ALJ's conclusion that these opinions were vague regarding precise residual functional capacity language is not the same as concluding that the evidence was ambiguous or the record inadequate regarding plaintiff's cognitive functioning. In fact, in *Ford v. Saul*, the U.S. Court of Appeals for the Ninth Circuit found that the ALJ's duty to further develop the record was not triggered despite a medical opinion that lacked specificity regarding residual functional capacity where the ALJ had years of health records and multiple medical opinions to inform her analysis. 950 F.3d 1141, 1156 (9th Cir. 2020).").

the pleadings is denied, and Defendant's cross-motion (ECF No.11) for the same relief is

granted.    The Clerk is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
        March 25 , 2026        ENTER:


_____
CHARLES J. SIRAGUSA
United States District Judge